Filed 10/17/23  N.G. v. Li CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| N.G., a Minor, etc., et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>TIFFANY LI,<br><br>    Defendant and Appellant. | A165477<br><br>(San Mateo County<br>Super. Ct. No. 18-CIV-01355) |

Tiffany Li was sued by her two minor children, through their guardian ad litem, for the wrongful death of their father. After settling the underlying lawsuit, Li appeals from the trial court's order denying a motion to seal filed in connection with plaintiffs' petition for approval of a minor's compromise.  Li contends that the trial court erroneously applied the sealed record rules (Cal. Rules of Court, rules 2.550–2.551)[1] to the motion and, in the alternative, that the court's findings are not supported by substantial evidence.  We disagree and affirm.

### BACKGROUND

### A.

N.G. and V.G. are Li's and Keith Green's minor children. Green died in 2016.  In 2018, N.G. and V.G., through their guardian ad litem Eileen O'Brien (collectively, the Minor

_____

[1] Undesignated rule references are to the California Rules of Court.

1

Plaintiffs), along with their grandmother Colleen Kay Cudd, sued Li for Green's wrongful death.

Li was initially charged with Green's alleged murder. However, she was acquitted in 2019. She regained custody of N.G. and V.G and moved the children to China. Thereafter, Li and the plaintiffs reached a settlement of their civil suit. The parties agreed that the settlement terms would be kept confidential.

In seeking the trial court's approval of the minors' compromise (Code Civ. Proc., § 372, subd. (a)(3); Prob. Code, § 3500, subd. (b)), the Minor Plaintiffs filed redacted versions of their petitions for approval. They also lodged unredacted petitions conditionally under seal. At the same time, the Minor Plaintiffs filed a motion to seal their unredacted petitions for approval. Li joined the motion to seal.

The trial court filed the unredacted petitions—which differed from the redacted versions in that they included the settlement amount Li agreed to pay to Minor Plaintiffs—conditionally under seal (rule 2.551(b)(4)). The unredacted petitions also attached the following supporting documents, which had been wholly redacted in the publicly filed petitions: (1) attorney fee declarations; (2) litigation costs attachments to those declarations; (3) plaintiffs' counsel's fee agreements; and (4) N.G.'s and V.G.'s respective trust instruments.

The Minor Plaintiffs' motion asked the trial court to seal—until N.G. and V.G. had both reached the age of 18 (in 2032)—any reference to the amount of the settlement and the four categories of documents listed above. The Minor Plaintiffs argued that the first three categories of documents should be sealed because they are protected by attorney-client and work product privileges. With respect to the settlement amount and their trust instruments (category four), the Minor Plaintiffs

2

argued their contractual and constitutional rights to financial privacy supported a sealing order.

In a barebones declaration filed in support of the motion to seal, plaintiffs' counsel stated that, since the fact of the settlement was announced in open court, he had been contacted by numerous media outlets, all of which asked how much money the Minor Plaintiffs would receive from the settlement.

The trial court issued a tentative decision, which proposed to grant the motion to seal with respect to the fee agreements, but otherwise deny it. However, the trial court later continued the hearing on the motion to seal to give the parties (and media) an opportunity to file additional briefs or declarations. No declarations or briefs were filed in opposition to the motion to seal. But four additional declarations in support were filed— from Li, the children's guardian ad litem (O'Brien), and two experts retained by Li's counsel, psychologist Margaret Lee, Ph.D. and licensed clinical social worker and professional fiduciary Jennifer Winship.

The declarations in support briefly described significant media attention that the civil and criminal cases had received (in the United States) over the course of almost six years. Dr. Lee and Winship also opined (as experts in their fields) that, if the settlement details were not sealed, the Minor Plaintiffs—who had thus far remained unaware of both the criminal case against their mother and the civil case filed on their behalf— would likely suffer emotional harm due to renewed media focus on the case.

After a hearing, the trial court approved the minors' compromise. The trial court also entered a written order that granted the motion to seal in part and denied it in part. After noting that no one disputed that the sealed records rules applied, the court granted the motion to seal with respect to the plaintiffs' fee agreements. However, the trial court concluded that, with respect to the settlement amount and the other three categories

of documents, the parties failed to meet their burden to demonstrate " 'facts sufficient' " to support sealing.

Regarding the trust instruments and references to the settlement amount, the court concluded the parties failed to meet their burden to show that prejudice to the minors' interests in financial privacy and avoiding emotional anguish was sufficient to overcome the public's First Amendment right to access. As to the attorney fee declarations and costs attachments, the trial court concluded that the Minor Plaintiffs' arguments and declarations were conclusory and failed to demonstrate that such documents were privileged. The trial court stayed enforcement of its order pending appellate review.

## DISCUSSION

### A.

Li insists the trial court erred by applying the sealed records rules (rules 2.550–2.551). In the alternative, she maintains that, even if the sealed records rules apply, substantial evidence does not support the trial court's findings. Although no respondent's brief was filed,[2] our examination of the record shows that neither of Li's arguments has merit.

---

[2] Plaintiffs filed a letter with this court indicating they would not file a respondent's brief because they do not oppose Li's appeal. In these circumstances, Li still bears the burden to affirmatively demonstrate error. We examine the record to evaluate the arguments raised in the appellant's brief and " 'reverse only if prejudicial error is found.' " (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1078; accord, rule 8.220(a)(2) [if no respondent's brief is filed, "the court may decide the appeal on the record, the opening brief, and any oral argument by the appellant"].)

4

**1.**

California courts have long recognized a common law right of access to public documents, including court records. (*Overstock.com, Inc. v. Goldman Sachs Group, Inc*. (2014) 231 Cal.App.4th 471, 483 (*Overstock.com*).)  Under the common law right of access, court records are presumed to be open to the public unless they are specifically exempted by statute or by the court itself.  (*In re Marriage of Tamir* (2021) 72 Cal.App.5th 1068, 1078 (*Tamir*).)  "[W]hen evaluating whether records should be sealed under the common law, courts engage in a balancing analysis, weighing the presumption of access against a variety of competing interests."  (*Overstock.com, supra,* at p. 484.)

Since the California Supreme Court decided *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178 (*NBC*), California courts also recognize a First Amendment right of public access to ordinary civil court proceedings and certain documents filed therein.  (*NBC, supra,* at p. 1208, fn. 25; *In re Marriage of Nicholas* (2010) 186 Cal.App.4th 1566, 1575.)  Before the presumption of openness established by the First Amendment may be overcome, the trial court must hold a hearing and expressly find that (1) there is an overriding interest supporting sealing of the records; (2) there is a substantial probability that the interest will be prejudiced absent sealing; (3) the sealing order is narrowly tailored to serve the overriding interest; and (4) there is no less restrictive means of meeting that interest.  (*NBC, supra*, at pp. 1217–1218.)  The Judicial Council codified the *NBC* constitutional standards in rules 2.550 and 2.551—which are also known as " 'the sealed records rules.' " (*Overstock.com, supra*, 231 Cal.App.4th at p. 486.)

The sealed records rules "apply to records sealed or proposed to be sealed by court order" (rule 2.550(a)(1)) and, more specifically, "materials that are used at trial or submitted as a basis for adjudication of matters other than discovery motions or

5

proceedings." (Rule 2.550(a)(3).) The rules do not apply "to records that are required to be kept confidential by law." (Rule 2.550(a)(2).)

The standard of review governing a trial court's decision to deny a sealing request is settled. First, we review de novo the legal question of whether the sealed records rules apply. (*Overstock.com, supra,* 231 Cal.App.4th at p. 492; *Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 81.) If the answer is affirmative, "we review the ultimately discretionary decision to deny sealing by inquiring whether substantial evidence supports the trial court's express or implied findings that the requirements for sealing are not met." (*Overstock.com* at p. 492; accord, *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 301–303 (*Providian*).)

In our review for substantial evidence, we consider the entire record, including the records which are the subjects of the sealing motion. (*Providian, supra*, 96 Cal.App.4th at p. 303.) We defer to the trial court's credibility determinations and consider all evidence and reasonable inferences in the light most favorable to the trial court's order. (*Overstock.com, supra*, 231 Cal.App.4th at p. 491, fn. 11; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630–631.)

**2.**

Li's first argument—that the trial court erred by applying the (more demanding) sealed records rules—need not detain us long. Li has forfeited this argument because she did not raise it below. (See *Oiye v. Fox* (2012) 211 Cal.App. 4th 1036, 1065.) In fact, both Li and the Minor Plaintiffs explicitly cited the sealed records rules and asked the trial court to apply them in deciding the motion to seal. Accordingly, any error was invited, and Li is estopped to assert it as a ground for reversal on appeal. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [invited error doctrine

6

"prevent[s] a party from misleading the trial court and then profiting therefrom in the appellate court"].)

## B.

In the alternative, Li challenges the sufficiency of the evidence supporting the trial court's findings—that she and Minor Plaintiffs failed to meet their burden to make the showing required by rule 2.550(d). Viewing the record in the light most favorable to the trial court's order (*Howard v. Owens Corning, supra,* 72 Cal.App.4th at pp. 630–631), we conclude the trial court's findings are adequately supported.

## 1.

Rule 2.550(c) provides: "Unless confidentiality is required by law, court records are presumed to be open." Accordingly, "[a] record must not be filed under seal without a court order" and "[t]he court must not permit a record to be filed under seal based solely on the agreement or stipulation of the parties." (Rule 2.551(a).)

Rule 2.550(d) provides that a court may order a record sealed "only if it expressly finds facts that establish: [¶] (1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest." (Rule 2.550(d).)

The party seeking to seal a document bears the burden of proof. (*H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 894.) Specifically, "[a] party requesting that a record be filed under seal must file a motion or an application for an order sealing the record. The motion or application must be accompanied by a

memorandum and a *declaration containing facts sufficient to justify the sealing*." (Rule 2.551(b)(1), italics added.)

**2.**

We begin with Li's challenge to the sufficiency of the evidence supporting the trial court's decision with respect to the settlement amount and the trust instruments. We reject Li's assertion that the trial court was compelled to find that Li and the Minor Plaintiffs presented facts sufficient to establish a substantial probability of prejudice to overriding interests that outweighs the right of public access.

The Minor Plaintiffs did identify interests—specifically, their contractual and constitutional privacy rights and interest in avoiding emotional suffering—that courts have recognized, in certain circumstances, can constitute overriding interests that support a sealing order. (*NBC, supra,* 20 Cal.4th at pp. 1206–1207, 1222, fn. 46; *Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1282–1283; *Huffy Corp. v. Superior Court* (2003) 112 Cal.App.4th 97, 106–107.)

Nonetheless, an agreement "alone is insufficient to constitute an overriding interest to justify sealing." (*McNair v. National Collegiate Athletic Assn.* (2015) 234 Cal.App.4th 25, 35–36; accord, rule 2.551(a) ["court must not permit a record to be filed under seal based solely on the agreement or stipulation of the parties"]; *Universal City Studios, Inc. v. Superior Court, supra,* 110 Cal.App.4th at pp. 1281, 1284.) Rather, there must also be " 'a specific showing ' " that " 'serious injury' " will occur absent a sealing order. (*McNair, supra,* at p. 35; *Huffy Corp. v. Superior Court, supra,* 112 Cal.App.4th at p. 106; accord, rule 2.550(d)(3); *NBC, supra,* 20 Cal.4th at p. 1218.) " ' "Broad allegations of harm, bereft of specific examples or articulated reasoning" ' " are insufficient. (*McNair, supra,* at p. 35.)

And although our state constitution recognizes a right to privacy in one's financial information (Cal. Const., art. I, § 1; *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656), we do not agree with Li that the record compels a finding that the Minor Plaintiffs' constitutional privacy rights outweigh the public's right to access in this case. "[S]tate constitutional privacy rights do not automatically 'trump' the First Amendment right of access under the United States Constitution." (*In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1059 (*Burkle*).) Instead, it depends on the context and the nature of the information sought to be sealed.

Privacy rights have been deemed weighty enough to outweigh First Amendment public access rights when highly sensitive information, such as identifying account or Social Security numbers, is involved. (See *Tamir, supra,* 72 Cal.App.5th at p. 1088; *Burkle, supra*, 135 Cal.App.4th at pp. 1063–1066.) In contrast, the mere size and existence of an asset, settlement, or salary is information that has been found unworthy of such extraordinary protection. (See *Tamir, supra,* at pp. 1088–1089, & fn. 8; *Burkle, supra*, at pp. 1063–1066, 1070; *Copley Press v. Superior Court* (1998) 63 Cal.App.4th 367, 376 (*Copley*) ["we find no authority [to support the proposition] that the amount of money a person receives in judgment or court-approved settlement as the result of tortious conduct is confidential"].)

Nor do we accept Li's position that the countervailing interest in public access is limited in this case because, in contrast to cases involving public funds or institutions (see *Copley, supra,* 63 Cal.App.4th at p. 376), "this is a settlement affecting only the interests of private individuals." In *NBC, supra,* 20 Cal.4th at page 1210, our Supreme Court rejected a similar argument and made clear that the public's First Amendment right of access in civil litigation is *not* limited to cases where the public is itself a party. (*Ibid*.) Our high court

explained: "We believe that the public has an interest, in *all* civil cases, in observing and assessing the performance of its public judicial system, and that interest strongly supports a general right of access in ordinary civil cases." (*Ibid*.) "Public access to civil proceedings serves to (i) demonstrate that justice is meted out fairly, thereby promoting public confidence in such governmental proceedings; (ii) provide a means by which citizens scrutinize and check the use and possible abuse of judicial power; and (iii) enhance the truth finding function of the proceeding." (*Id.* at p. 1219.)

Given this clear statement from our high court, Li's reliance on language in a case that predates *NBC* (*Copley, supra*, 63 Cal.App.4th at p. 376) is unpersuasive. Indeed, the policy favoring public access in this case appears particularly weighty. Because this case involves parties that are minors, California law requires judicial review of the settlement to protect the minors' interests. (See *Pearson v. Superior Court* (2012) 202 Cal.App.4th 1333, 1338.) Public access to a petition for approval of a minor's compromise helps ensure the very scrutiny and public confidence that our Supreme Court described in *NBC*.

Li runs into further trouble at the second stage of the overriding interest analysis— she and the Minor Plaintiffs failed to satisfy their burden of proving a substantial probability that the identified interests would be prejudiced absent sealing. They did not even attempt to establish a substantial probability of any such injury with respect to their contractual interests. Rather, they focused solely on prejudice to the Minor Plaintiffs' interests in emotional security.

Dr. Lee's declaration outlined the trauma that the children had already suffered *because of the death of their father and their mother's criminal prosecution*: "These girls have experienced a tremendous amount of loss and instability throughout their lives. They experienced the break-up of their parents, the death of their

father, the 'disappearance' of their mother, a change to being cared for by their grandmothers and then returning to their mother's care. All this occur[ed] in a context where they were too young to understand what was going on and were provided with good, but somewhat vague, explanations of why these changes were happening. This history places these children at greater risk for difficulties in development and potential emotional difficulties. They will have a lot to sort out and make sense of as they age and have a better capacity to integrate their experiences."

In addition, Dr. Lee explained that N.G. and V.G. "are unaware that their mother was sued. Publicity could confront them with the idea that they sued their own mother- again[,] a very confusing situation and potentially quite disturbing. At some point they will need to know more about the events of their lives but hopefully they are protected until they have the cognitive ability and maturity to make sense of it." Dr. Lee concluded, "If the settlement details are not sealed, it seems likely that the media will again grab on to the story of the heiress, the alleged murder and then adding in that mother paid money, which no doubt would be seen as an admission of responsibility by the press. This is very likely to then expose the children to this information and given the nature of some of the press would likely expose the girls to very confusing ideas about their mother. . . . If prematurely exposed to too much adult information that they would have no way of understanding, it seems likely that they would suffer emotional harm. This would be yet another 'adverse' event in their lives, one that seems to be an unnecessary risk."

Li asks us to accept the inference that Dr. Lee and Winship drew—that publicly disclosing the settlement amount would lead to a renewed media frenzy that would increase the risk that N.G. and V.G. would learn of their suit and, in turn, destabilize their

11

relationship with Li and cause emotional harm. Of course, the interest in protecting children from emotional harm may, in certain cases, justify limits on public access. (*NBC, supra,* 20 Cal.4th at pp. 1206-1207, 1222, & fn. 46.) However, there is no blanket rule of nondisclosure. (*Ibid.*) Nor are we considering this matter in the first instance.

First, the trial court (in its role as fact finder) had no obligation to accept the unanimous expert opinions of Dr. Lee and Winship. (*In re Scott* (2003) 29 Cal.4th 783, 823.)

Second, while the uncontradicted supporting declarations establish that the amount of the parties' settlement and the terms of the trust instruments are not publicly known, the declarations and redacted petitions themselves also show that the criminal case—and the fact that Li agreed to pay money to her children to settle the wrongful death suit—has already received significant media attention in the United States over the course of six years. In fact, plaintiffs' declarations establish that the existence of a settlement agreement was announced in open court in January 2022 and that numerous American media outlets published articles shortly thereafter. There is very little in the declarations focused directly on the impact on the children of the *new* information—the amount of the settlement and the terms of the trust instruments.

Essentially, the parties are primarily concerned with avoiding new stories in the press. They fear it would increase the risk that N.G. and V.G.—who have thus far been successfully protected from American publicity in China—will discover the underlying (already public) information. Of course, other events may trigger new stories—including the decision in this appeal, regardless of its outcome. The risks that Dr. Lee describes highlight the fact that Li and her children are already in a difficult situation.

12

Thus, a fact finder could reasonably infer from the evidence—as did the trial court here—that although the disclosure of the precise settlement amount and the trust instruments could be emotionally harmful to the minors, the showing remains insufficient to demonstrate a substantial probability of prejudice absent sealing that overrides or outweighs the interest in public access. (See *NBC, supra,* 20 Cal.4th at p. 1222, fn. 47 [when most sensitive information has already been publicly reported, there is good reason to question closure proponent's showing of substantial probability of prejudice absent closure]; *Copley, supra*, 63 Cal.App.4th at p. 376 [reversing trial court's refusal to unseal amount minor student received to settle sexual assault claim because amount itself is neither confidential nor the cause of student's mental anguish].)

On this record, it was reasonable for the trial court to find Li and Minor Plaintiffs failed to meet their burden to show a substantial probability of prejudice absent sealing or to show that any prejudice to these interests overcomes the right of public access. (See *Providian, supra,* 96 Cal.App.4th at p. 301 [" '[w]here different inferences may reasonably be drawn from undisputed evidence, the conclusion of the jury or trial judge must be accepted by the appellate court' "].)

**3.**

Li also challenges the sufficiency of the evidence supporting the trial court's finding with respect to sealing plaintiffs' attorney fee declarations and costs attachments. The trial court concluded that Minor Plaintiffs failed to meet their burden to show that such documents were privileged.

Minor Plaintiffs, as the holder of the attorney-client privilege (Evid. Code, § 953, subds. (a)-(b)), would have standing to assert this argument on appeal. However, Minor Plaintiffs did *not* file a notice of appeal. Only Li did. And Li cannot assert this challenge on appeal absent any injury to *her*. (See Code Civ.

13

Proc., § 902; *In re Marriage of Moore* (1980) 28 Cal.3d 366, 374; *Laubscher v. Blake* (1935) 7 Cal.App.2d 376, 381.)

We conclude that the portion of the sealing order that addresses the attorney fee declarations and costs attachments is now final.  (See *Estate of McDill* (1975) 14 Cal.3d 831, 840 ["[a]s a general rule, where only one of several parties appeals from a judgment, the appeal includes only that portion of the judgment adverse to the appealing party's interest, and the judgment is considered final as to the nonappealing parties"].)

## DISPOSITION

The order denying in part and granting in part the motion to seal is affirmed.  The stay issued by the trial court shall dissolve upon issuance of the remittitur.  The parties shall bear their own costs on appeal.  (Rule 8.278(a)(5).)


BURNS, J.


WE CONCUR:


JACKSON, P.J.
SIMONS, J.

*N.G., et al. v. Li* (A165477)

14